UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

RICHARD BEHAR,

    Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY,

    Defendant.

Nos.  17 Civ. 8153 (LAK)
18 Civ. 7516 (LAK)

---

DECLARATION OF KIM E. CAMPBELL,
SPECIAL AGENT IN CHARGE, LIAISON DIVISION, AND
FREEDOM OF INFORMATION AND PRIVACY ACTS OFFICER,
UNITED STATES SECRET SERVICE

I, Kim E. Campbell, make the following declaration in lieu of affidavit pursuant to 28 U.S.C. § 1746:

1. I am the Special Agent in Charge of the Liaison Division, Office of Government and Public Affairs, and the Freedom of Information and Privacy Acts (FOI/PA) Officer for the United States Secret Service ("Secret Service"), Department of Homeland Security ("DHS"). In this position, I oversee the Freedom of Information and Privacy Acts Office. I have been assigned as the Secret Service FOI/PA Officer since July 2014.

2. I have been employed with the Secret Service since July 1990, and as a Special Agent (GS-1811) since April 1992. My experience includes service in the Presidential Protective Division (PPD) from January 1999 to June 2003, protecting then-President

1

William J. Clinton and First Lady Hillary Clinton, as well as then-President George W. Bush and First Lady Laura Bush.

3. DHS regulations, Title 6, Code of Federal Regulations, Section 5.4, and Appendix A, II(I)(3), 68 Fed. Reg. 4056, 4058, and 4069, vest authority in the Secret Service FOI/PA officer to make determinations as to whether to grant requests for access to Secret Service records made under the Freedom of Information Act ("FOIA"), Title 5 of the United States Code, Section 552(b).

4. This declaration is submitted to describe the Secret Service's response to Plaintiff's September 22, 2017 FOIA request seeking records identifying individuals who were screened and/or noted by the Secret Service because they either (a) sought to visit Donald Trump or certain of his family members and campaign officials, or (b) sought access to a secured area at which those individuals were present, between November 1, 2015 and January 21, 2017 [hereinafter Plaintiff's first FOIA request].

5. This declaration is also submitted to describe the Secret Service's processing of Plaintiff's May 14, 2018 FOIA request seeking "schedules" and any additional documents the Secret Service located in connection with the search conducted in connection with Plaintiff's first FOIA request that "reference any individuals attending or expected to attend meetings with Mr. Trump and/or the Trump family members and/or campaign officials described in [Plaintiff's] September 22, 2017 FOIA request" [hereinafter Plaintiff's second FOIA request].

6. This declaration is based upon my personal knowledge and experience, upon review of the documents described below, and upon information acquired by me during the performance of my official duties from other Secret Service employees who were

involved in the searches conducted in response to Plaintiff's FOIA requests and/or the processing of Plaintiff's FOIA requests and records potentially responsive to Plaintiffs' FOIA requests.

The Secret Service's Search for Records Responsive to Plaintiff's First FOIA Request

7. Pursuant to a Joint Stipulation and Order dated February 16, 2018, and entered by the Court on February 21, 2018, in Plaintiff's first lawsuit, 17 Civ. 8153(LAK) (SDNY), the Secret Service compiled the emails (including attachments) of the Secret Service Detail Leaders, Assistant Detail Leaders, and Operations Supervisors for protectee Donald Trump (to the extent those officials could be determined from USSS work schedules) for the period from November 1, 2015, to January 21, 2017, that contained the name or code name of Secret Service protectees Donald Trump, Eric Trump, Donald Trump, Jr., or Ivanka Trump. This compilation is referred to as the "Email Set."

8. Pursuant to the Joint Stipulation and Order, the Secret Service searched the Email Set for the following terms and names identified by Plaintiff:

Mayflower
Wikileaks
NRA
Russia
Alexander Machkevich
Alexander Mirtchev
Alexander Artemenko
Aras Agalorv
Betsy DeVos
Boris Ephshteyn
Devin Nunes
Dmitry Rybolovlev
Ed Rogers
Elliot Broidy
Erik Prince
Felix Sater
George G. Lombardi
George Papadopoulos

3

      Giorgi Rtskhiladze
      Irakly Kaveladze
      JD Gordon
      Kairat Kelimbetov
      Len Blavatnik
      Maria Butina
      Mikhail Prokhorov
      Natalia Veselnitskya
      Nigel Farage
      Rick Dearborn
      Rick Gates
      Robert Armao
      Roger Stone
      Sergey Kislyak
      Tevfik Arif
      Tom Barrack
      Vladimir Putin
      Yuri Vanetik

9. Pursuant to the Joint Stipulation and Order, the Secret Service then reviewed all emails captured by this search to identify any records responsive to Plaintiff's first FOIA request.

10. Pursuant to the Joint Stipulation and Order, in addition to the above-described search and review, the Secret Service also identified those emails within the Email Set (as described in paragraph 7 above) that contained the terms "visitor" or "meeting." This compilation is referred to as the "Narrowed Email Set."

11. Pursuant to the Joint Stipulation and Order, the Secret Service then reviewed from the Narrowed Email Set:

    a. Each email dated between November 1, 2016, and November 8, 2016, between December 5, 2016, and December 12, 2016, and between January 14, 2017 and January 21, 2017, to identify any records responsive to Plaintiff's first FOIA request;

    b. Each email dated between April 21, 2016, and April 28, 2016, to identify any records responsive to Plaintiff's first FOIA request;

    c. Each email dated between July 11, 2016, and July 28, 2016, to identify any records responsive to Plaintiff's first FOIA request; and

    d. All emails containing the term 'visitor."

12. In the Joint Stipulation and Order, Plaintiff and the Secret Service agreed to exclude certain records as non-responsive to Plaintiff's first FOIA request if the e-mail contained notations by the Secret Service of individuals who presented a security concern.[1]

Emails Responsive to Plaintiff's First FOIA Request

13. Through the above-described search and review, the Secret Service identified a total of nine emails responsive to Plaintiff's first FOIA request.

14. Two of these e-mails were produced to Plaintiff in part, with attachments. The attachments were iterations of the same document: a name check spreadsheet for a charter flight on which then-candidate Donald Trump would be traveling.

15. The only information redacted from these two e-mails were the names of Secret Service Special Agents and the dates of birth and social security numbers of the charter passengers. These redactions were made pursuant to Title 5, United States Code, Section 552(b)(6) (FOIA exemption (b)(6)) and Title 5, United States Code, Section 552(b)(7)(C) (FOIA exemption (b)(7)(C)).

---

[1] Pursuant to the Joint Stipulation and Order, the Secret Service also produced to Plaintiff copies of redacted visitor records from the Presidential Transition Office that were processed and produced in a separate FOIA case, although the Secret Service did not make a determination that those records were responsive to Plaintiff's September 22, 2017 FOIA request.

16. Of the seven remaining emails, five are from the campaign period and two are from the transition period.

    a.    The five emails from the campaign period consist of:

- an April 2016 email chain referring to a future meeting between Mr. Trump and a specific individual assisting with preparation for a speech;

- a July 2016 email referring to an ongoing meeting between Mr. Trump and a specific individual and staff at Trump Tower;

- an August 2016 email containing references to three specific individuals who may accompany Mr. Trump or meet with him during an upcoming trip: Wisconsin Governor Scott Walker, Rudolph Giuliani, and Milwaukee County Sheriff David Clarke.[2] *The email contains specific information concerning security planning for the trip, including an intelligence and threat assessment and details regarding staffing of security personnel, including local law enforcement assistance. The email attaches site diagrams and photographs*;

- a September 2016 email chain referring to a future meeting between Mr. Trump and a specific individual. The first email in the chain emphasizes the non-public nature of the meeting; and

- a July 2016 email referring to a meeting that day with a specific individual. *The email also contains specific information concerning USSS staffing and screening responsibilities.*

    b.    The two emails from the transition period consist of:

---

[2] The Secret Service has determined that these individuals appeared in public with Mr. Trump during the trip in question, and therefore has provided Plaintiff with a redacted version of this email that releases their names.

- a November 2016 email providing a list of individuals who would need access to certain areas within Trump Tower, *and describing related security arrangements for access to secure areas of Trump Tower*; and

- a January 2017 email referring to a meeting that day with a specific individual, Martin Luther King III,[3] and other unidentified individuals. *The email also contains information regarding USSS staffing and responsibilities of specific USSS personnel with regard to screening and other protective activities.*

17. With respect to the three emails in paragraph 16 above that reflect a scheduled visitor/meeting or ongoing visit/meeting, but no law enforcement investigative/protective information, the Secret Service withheld these three e-mails pursuant to FOIA exemptions (b)(6) and (b)(7)(C).

18. With respect to the four emails in paragraph 16 above that include law enforcement investigative and protective information and reference a scheduled or ongoing visit/meeting, with the exception of the names of visitors whom the Secret Service determined had appeared in public with Mr. Trump, the Secret Service withheld the e-mails pursuant to FOIA exemptions (b)(6) and (b)(7)(C), as well as FOIA exemption (b)(7)(E), Title 5, United States Code, Section 552(b)(7)(E).

19. A description of and explanation for the withholdings from these e-mails is set out below.

Schedules of Candidate and President-elect Trump

20. During the course of the review pursuant to the Joint Stipulation and Order, the Secret Service identified schedules reflecting potential meetings with candidate and President-

---

[3] The Secret Service has determined that this individual appeared in public with Mr. Trump at Trump Tower on the date in question, and therefore has provided Plaintiff with a redacted version of this email that releases his name.

elect Trump. Multiple drafts of the same schedules were identified, reflecting the evolution of the candidate's and President-elect's schedules over time. Some of these schedules include time periods both prior to and after President Trump was inaugurated on January 20, 2017.

21. These schedules were determined not to be responsive to Plaintiff's first FOIA request as they did not reflect any screening or notation of individuals by the Secret Service. It is my understanding that counsel for the Secret Service advised Plaintiff in writing of the existence of the schedules and his ability to file an additional FOIA request for them if he sought those records.

Plaintiff's Second FOIA Request

22. After notification that the Secret Service had located schedules in connection with Plaintiff's first FOIA request, Plaintiff filed a second FOIA request seeking these schedules and any additional documents that the Secret Service located in connection with the search and review conducted pursuant to the Joint Stipulation and Order that "reference any individuals attending or expected to attend meetings with Mr. Trump and/or the Trump family members and/or campaign officials described in my September 22, 2017 FOIA request [the first FOIA request]."

23. Apart from the schedules, the Secret Service located no other records during its search and review pursuant to the Joint Stipulation and Order that "reference any individuals attending or expected to attend meetings with Mr. Trump and/or the Trump family members and/or campaign officials described in my September 22, 2017 FOIA request [the first FOIA request.]," other than those that had already been identified with respect to Plaintiff's first FOIA request (the seven e-mails discussed in paragraph 16).

24. By letter dated June 11, 2018, the Secret Service advised Plaintiff that it was withholding the schedules in full. Plaintiff appealed the Secret Service's determination. On August 8, 2018, the Secret Service denied Plaintiff's appeal.

25. With respect to those schedules that reflect dates both prior to the Inauguration and after the Inauguration, the Secret Service has determined that the portions reflecting the President's schedules after the Inauguration on January 20, 2017, and on January 21, 2017 are not "agency records" subject to FOIA.

### FOIA Exemptions Claimed

26. FOIA exemption 552(b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Information that applies to or describes a particular individual qualifies as "personnel," "medical," or "similar files" under exemption (b)(6). This exemption protects both government officials and private individuals whose identities are revealed in government records from unwarranted invasion of their personal privacy that would not shed light on government activities.

27. FOIA exemption (b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This exemption protects, among other information, the identifying information of government personnel and third parties that has been compiled for law enforcement purposes.

28. FOIA exemption (b)(7)(E) exempts from disclosure "records or information compiled for law enforcement purposes" the disclosure of which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose

guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

29. The Secret Service is a criminal law enforcement and security agency created under Title 18, United States Code, Section 3056. All of the records identified as responsive to Plaintiff's FOIA requests were compiled in connection with the Secret Service's investigative and protective mission. As such, these Secret Service records meet the threshold requirement of exemption (b)(7) of having been compiled for law enforcement purposes.

30. With respect to the responsive e-mails described in paragraph 16 above, the Secret Service is invoking exemptions (b)(6) and (b)(7)(C) to withhold the names of the visitors and information concerning the nature and/or circumstances surrounding the visits, and the names, certain e-mail addresses, and phone numbers of law enforcement personnel and non-visitor third parties (including campaign and transition staff) whose names and contact information appear on these documents.

31. With respect to the schedules of candidate and President-elect Trump, responsive to Plaintiff's second FOIA request, the Secret Service is invoking exemptions (b)(6) and (b)(7)(C) to withhold the schedules in full, as the release of these records would result in a clearly unwarranted invasion of the personal privacy of Mr. Trump and the individuals identified in the schedules and/or could reasonably be expected to constitute an unwarranted invasion of their personal privacy.

32. In making the determination to withhold these records under exemption (b)(6) and (b)(7)(C), the Secret Service balanced the public's interest in disclosure against the privacy interests of both Mr. Trump and the individuals identified in the records.

33. In regard to the names and contact information of law enforcement personnel, the Secret Service determined that there is no cognizable public interest in disclosure of this information, since this information does not reveal anything about the manner in which the agency conducts its activities. Moreover, the public interest is best served by the non-disclosure of such information, since disclosure could result in the personal harassment of law enforcement personnel and consequent diminishment of the ability of law enforcement personnel to perform their duties. Given these factors, the Secret Service determined that the privacy interests of law enforcement personnel outweigh the public's interest in disclosure.

34. In regard to the names of private individuals contained in the withheld emails and schedules and information relating to the nature and/or circumstances of their visits, as well as the names, emails and other information of campaign or transition staff members identified in the emails, the Secret Service determined that the privacy interests of both Mr. Trump and the identified individuals outweigh any public interest in disclosure. The Secret Service determined that there is no cognizable public interest in disclosure of the names of the individuals, because such information reveals nothing about the manner in which the Secret Service conducts its activities. Balanced against this lack of any cognizable public interest, candidates and Presidents-elect have a strong privacy interest in maintaining the confidentiality of their personal schedules and the identity of individuals with whom they meet. Many of the schedules bear headings or logos which identify them as emanating from the Trump campaign or the President-elect, underscoring their private nature. In addition, many of the schedules are labelled "**Confidential: for Internal Planning Purposes Only: Not to be copied or shared.**"

Other similar statements can be found in the schedules, such as "Reminder to please not distribute this calendar as it is highly confidential." The Secret Service understood that these schedules were to be treated confidentially and that the information contained in these schedules was only to be used for the execution of its investigative and protective mission, and the Secret Service treated and used them as such.

35. There is also a significant public interest in non-disclosure of confidential information provided to the Secret Service by candidates, Presidents-elect, and other protectees who are private citizens. In order to fulfill its protective mission, the Secret Service needs to obtain information from its protectees, including information about their schedules and future meetings. This information allows the Secret Service to staff its protective details appropriately, advance and secure locations as needed, and provide for its agents to be physically located where needed at any given time. Protectees will be reluctant to provide this information to the Secret Service if they believe that by doing so the information will become subject to public disclosure under FOIA. Thus, compelled disclosure under FOIA of the names of individuals who meet with Presidential candidates and Presidents-elect would harm the public interest, by jeopardizing the flow of information from protectees to the Secret Service and thereby making it more difficult for the Secret Service to protect candidates and Presidents-elect.

36. Given these factors, the Secret Service determined that the privacy rights of the law enforcement personnel, the Presidential candidate and President-elect, and the third parties identified in the documents outweighed any public interest in disclosure.

37. With respect to the responsive e-mails in paragraph 16 with italicized information, the Secret Service is also invoking exemption (b)(7)(E) to protect the italicized information

because these e-mails contain specific information concerning law enforcement techniques and procedures, including (1) staffing of protective details, including numbers of security personnel assigned to particular details; (2) responsibilities of individual Secret Service agents or groups of agents with regard to screening and securing physical spaces and the protectee (Mr. Trump); (3) specific security arrangements for an upcoming trip by candidate Trump, including an intelligence and threat assessment, details regarding staffing of security personnel, including local law enforcement assistance, and site diagrams and photographs; and (4) security arrangements for access by certain individuals to secure areas of Trump Tower. The particular manner and circumstances in which the Secret Service uses these techniques and procedures is not publicly known, and would be revealed by release of this information. (Only the italicized information is being withheld under exemption (b)(7)(E); no names are being withheld under exemption (b)(7)(E).) The release of such information, particularly when collected from multiple documents and analyzed, would provide a roadmap and permit individuals to circumvent investigative and security procedures established to ensure the safety of the agency's protectees.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

October 3, 2018
Date

Kim E. Campbell
Special Agent in Charge,
Freedom of Information Act and
Privacy Act Officer
Liaison Division
United States Secret Service

13