UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RICHARD BEHAR,

                Plaintiff,

        -against-

U.S. DEPARTMENT OF HOMELAND
SECURITY,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/15/19

17-cv-8153 (LAK)
18-cv-7516 (LAK)

## MEMORANDUM OPINION

Appearances:

    John Langford
    David Schulz
    Charles Crain
    MEDIA FREEDOM & INFORMATION ACCESS CLINIC
    ABRAMS INSTITUTE[1]

    *Attorneys for Plaintiff*

    Sarah S. Normund
    Assistant United States Attorney
    GEOFFREY S. BERMAN
    UNITED STATES ATTORNEY

    *Attorneys for Defendant*

---

[1]     Law students Anna Windemuth and Jacob van Leer assisted plaintiff's counsel.

LEWIS A. KAPLAN, *District Judge.*

This case involves Freedom of Information Act ("FOIA") requests of Richard Behar—an investigative reporter and contributing editor at *Forbes* magazine—to obtain records from the United States Secret Service ("USSS") identifying visitors to Donald Trump during the periods in which Mr. Trump was a presidential candidate receiving USSS protection and while he was president-elect. For the reasons explained below, defendant's motions for summary judgment are granted in part and denied in part and plaintiff's cross-motion is denied.

## Background

### I. Factual History

In September 2017, plaintiff submitted a FOIA request to the Department of Homeland Security ("DHS") seeking records and communications identifying individuals who were screened and/or noted by the USSS because they either (a) sought to visit Donald Trump or certain of his family members or campaign officials, and/or (b) sought access to any secured area where those individuals were present.[2] The request was "limited to records of individuals screened or noted by the USSS between November 1, 2015, and January 21, 2017," which is understood to be the time during which Mr. Trump received USSS protection until the date of his inauguration.[3] Plaintiff

---

[2]

DI 1-1 at ECF 3-4. Unless stated otherwise, "DI" numbers reference documents filed in case 17-cv-8153.

The campaign officials and family members named in the request were: Eric Trump, Donald Trump, Jr., Ivanka Trump, Jared Kushner, Paul Manafort, Michael Flynn, Corey Lewandowski, Michael Cohen, Stephen Bannon and Kelleyanne Conway. *Id.* at ECF 3.

[3]

*Id.* at ECF 4.

requested expedited processing of the request.[4]

In early October 2017, DHS advised Mr. Behar that his request was being transferred to the FOIA officer for the USSS.[5] By late October, plaintiff had not yet received the requested documents and filed suit to challenge defendant's failure to disclose them.[6]

In February 2018, the Court entered a Joint Stipulation and Order pursuant to which defendant reviewed a narrowed email set collected from the USSS detail leaders, assistant detail leaders and operations supervisors assigned to protectee Donald Trump.[7] Defendant identified nine emails responsive to the FOIA request, and two of those emails were produced with redactions.[8] The redactions on those emails are not being challenged in this action. Of the remaining seven emails, five are from the campaign period and two are from the transition period.[9] As described in a declaration submitted by the FOIA and privacy acts officer for the USSS,[10] these documents include:

---

[4]

Id.

[5]

DI 1-4 at ECF 2.

The USSS is a component of defendant DHS. DI 7 at 2; DI 29 at ECF 7.

[6]

DI 1.

[7]

DI 23.

[8]

DI 28 at 5.

[9]

The transition period refers to the time after Mr. Trump was elected President, but before his inauguration.

[10]

DI 28.

From the campaign period:

- an April 2016 email chain referring to a future meeting between Mr. Trump and a specific individual assisting with preparation for a speech;

- a July 2016 email referring to a meeting between Mr. Trump and a specific individual and staff at Trump Tower;

- an August 2016 email containing references to three individuals who might accompany or meet with Mr. Trump during a then upcoming trip: Scott Walker, Rudolph Giuliani and Sheriff David Clarke.[11] *The email contains specific information concerning security planning for the trip, including an intelligence and threat assessment and details regarding staffing of security personnel, including local law enforcement assistance. The email attached site diagrams and photographs;*

- a September 2016 email chain referring to a then future meeting between Mr. Trump and a specific individual; and

- a July 2016 email referring to a meeting that day with a specific individual. *The email contains also specific information concerning USSS staffing and screening responsibilities.*

From the transition period:

- a November 2016 email providing a list of individuals who would need access to

---

[11] The USSS determined that these individuals appeared in public with Mr. Trump during the trip in question and therefore provided plaintiff with a redacted version of the email releasing their names.

certain areas within Trump Tower *and describing related security arrangements for access to secure areas of Trump Tower*; and

- a January 2017 email referring to a meeting that day with Martin Luther King III[12] and other unidentified individuals. *The email contains also information regarding USSS staffing and responsibilities of specific USSS personnel with regard to screening and other protective activities.*[13]

In May 2018, defendant's counsel notified plaintiff of schedules reflecting potential meetings with Mr. Trump while he was a candidate and president-elect and that defendant did not consider them to be responsive to the FOIA request because they did not "reflect[] any screening or notation of individuals by the USSS."[14] These documents reflect, to some extent, the evolution of Mr. Trump's schedules over time.[15] Shortly thereafter, plaintiff filed a second FOIA request seeking production of the schedules and any additional documents that the USSS located in connection with the search and review conducted pursuant to the Joint Stipulation and Order that "reference any individuals attending or expecting to attend meetings with Mr. Trump and/or the Trump family members and/or campaign officials described in [the first FOIA request]."[16]

---

12

The USSS determined that this individual appeared in public with Mr. Trump at Trump Tower on that date and therefore provided plaintiff with a redacted version of the email releasing his name.

13

DI 28 at 6-7.

14

18-cv-7516 DI 7-2 at ECF 10.

15

DI 28 at 8.

16

18-cv-7516 DI 7-2 at ECF 4.

The USSS did not identify any additional documents responsive to plaintiff's second request apart from the schedules.[17]  In June 2018, defendant informed plaintiff that it was withholding the schedules in full.[18]  Plaintiff submitted an administrative appeal,[19] and the USSS upheld its decision to withhold the schedules.[20]  In August 2018, plaintiff filed the second of these actions to compel disclosure of the schedules.[21]  In October 2018, defendant filed motions for summary judgment dismissing both actions, and plaintiff cross-moved for summary judgment.[22]

## II.    *FOIA Exemptions Claimed*

Defendant has withheld from production or redacted certain information from the responsive documents described above pursuant to three FOIA exemptions.  Exemption (6) applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[23] Exemption (7)(C) applies to "records or information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to

---

[17]

DI 28 at 8.

[18]

18-cv-7516 DI 7-3.

[19]

18-cv-7516 DI 7-4.

[20]

18-cv-7516 DI 7-5.

[21]

18-cv-7516 DI 1.

[22]

DI 30.

[23]

5 U.S.C. § 552 (b)(6).

constitute an unwarranted invasion of personal privacy."[24] Exemption 7(E) applies to "records or information compiled for law enforcement purposes" the disclosure of which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."[25]

With regard to the responsive emails described above, the USSS invoked exemptions (6) and (7)(C) to "withhold the names of the visitors and information concerning the nature and/or circumstances of the visits, and the names, certain email addresses, and phone numbers of law enforcement personnel and non-visitor third parties whose names and contact information appear on these documents."[26] The USSS withheld all of the schedules pursuant to exemptions (6) and (7)(C). It determined that the privacy rights of the law enforcement personnel, Mr. Trump, and the third parties identified in the documents outweighed any public interest in disclosure.[27]

The USSS withheld the italicized portions of certain emails described above pursuant to exemption (7)(E), on the grounds that they "contain specific information concerning law enforcement techniques and procedures, including: (1) staffing of protective details, including numbers of security personnel assigned to particular details; (2) responsibilities of individual USSS agents; (3) specific security arrangements for an upcoming trip by candidate Trump; and (4) security

---

[24] 5 U.S.C. § 552 (b)(7)(C).

[25] 5 U.S.C. § 552 (b)(7)(E).

[26] DI 28 at ¶ 30.

[27] *Id.* at ¶ 31.

arrangements for access by certain individuals to secure areas of Trump Tower."[28]

*Discussion*

I.     *FOIA Summary Judgment Standard*

FOIA confers upon federal courts "jurisdiction to enjoin [a federal] agency from withholding agency records and to order the production of any agency records improperly withheld[.]"[29] Disclosure of "agency records" is mandated unless they fall within one of FOIA's enumerated exemptions.[30]

"Summary judgment is the usual mechanism for resolving disputes under FOIA."[31] "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA."[32] Furthermore,

> "[s]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith. Ultimately, an agency's justification for invoking a

---

28

    *Id.* at ¶ 37.

29

    U.S.C. § 552(a)(4)(B).

30

    *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999).

31

    *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. Dep't of Homeland Sec.*, 331 F.Supp.3d 74, 83 (S.D.N.Y. 2018).

32

    *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).

FOIA exemption is sufficient if it appears logical or plausible."[33]

However, "[s]ummary judgment in favor of [a] FOIA plaintiff is appropriate when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption."[34]

## II. Applicability of Exemption 7

As explained above, defendant withheld all of the schedules and certain information from the responsive emails pursuant to exemptions 6 and 7(C). Plaintiff does not contest that these records constitute "similar files" that meet the threshold requirement of exemption 6. Plaintiff, however, argues that the records cannot be withheld under exemption 7(C) because defendant has failed adequately to demonstrate that they were "compiled for law enforcement purposes."[35]

"To show that particular documents qualify as 'records or information compiled for law enforcement purposes,' an agency must establish a rational nexus between the agency's activity

---

[33]

    *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

[34]

    *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 36 F.Supp.3d 384, 398 (S.D.N.Y. 2014) (quoting *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F.Supp.2d 501, 509 (S.D.N.Y. 2007)).

[35]

    This distinction is potentially significant because the differing levels of protection afforded by exemption 6 and exemption 7(C) "result from an explicit compromise between the executive and legislative branches making Exemption 7(C) broader and more easily satisfied so that disclosure under it is more difficult to obtain." *Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 509 (2d Cir. 1992).

in compiling the documents and 'its law enforcement duties.'"[36]

The USSS submitted a declaration stating:

"The Secret Service is a criminal law enforcement and security agency created under Title 18, United States Code, Section 3056. All of the records identified as responsive to Plaintiff's FOIA requests were compiled in connection with the Secret Service's investigation and protective mission. As such, these Secret Service records meet the threshold requirement of exemption (b)(7) of having been compiled for law enforcement purposes."[37]

Plaintiff argues that the declaration is insufficient to trigger Exemption 7 because "[c]onspicuously absent from the government's papers is any demonstration that the Secret Service used the Emails and Schedules to conduct background checks, plan security arrangements, or otherwise facilitate any specific law enforcement activity."[38] Plaintiff acknowledges that numerous courts have held that other types of records compiled in the course of the USSS's protective and investigative duties are protected by Exemption 7, but argues that "the government submitted non-conclusory evidence demonstrating the existence of a rational nexus between the withheld records at issue and the specific law enforcement activities carried out by the USSS" in each of those cases.[39] Defendant argues that its declaration here is sufficient to satisfy the threshold requirement of exemption 7 because the explanation it provides is "entirely logical and plausible, as the Withheld Emails and Schedules were either received or created (and therefore 'compiled') by the [USSS] in

---

[36]

*Brennan Ctr. for Justice*, 331 F. Supp. 3d at 97 (quoting *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987)).

[37]

DI 28 at ¶29.

[38]

DI 43 at 2.

[39]

*Id.* at 2-3.

the course of protecting Mr. Trump, and the [USSS]'s actions in safeguarding protectees are indisputably undertaken for a law enforcement purpose."[40]

"The ordinary understanding of law enforcement includes . . . proactive steps designed to prevent criminal activity and *to maintain security*."[41] And "[t]here can be no doubt . . . that the Secret Service acts with a law enforcement purpose when it protects federal officials [and presidential candidates] from attack, even though no investigation may be ongoing."[42] There is no evidence in the record suggesting that the USSS compiled the records for reasons other than those offered in the USSS declaration. Nor is there any evidence suggestive of agency bad faith. The threshold requirement of exemption 7 therefore is satisfied. We accordingly evaluate the documents withheld on privacy grounds under exemption 7(C), and not under exemption 6.[43]

---

[40]

DI 40 at 5.

[41]

*Milner v. Dep't of the Navy*, 562 U.S. 562, 582 (2011) (Alito, J., concurring) (emphasis added).

[42]

*Id.* at 583.

[43]

Plaintiff does not challenge the assertion that the material withheld pursuant to exemption 7(E) "would disclose techniques and procedures for law enforcement investigations or prosecutions." He contests only whether the information was compiled for law enforcement purposes. Having concluded that the requested information was compiled for law enforcement purposes, it follows that plaintiff effectively has waived any challenge to plaintiff's 7(E) exemption claims.

Defendant argues that any information reflecting the meetings of Mr. Trump post-dating his inauguration are not "agency records" subject to FOIA. Plaintiff has confirmed that he "does not seek information about visits to Mr. Trump after his inauguration." DI 43 at 1, fn. 1.

*III.    Exemption 7(C) Balancing Test*

"Exemption 7(C) requires a court to balance the public interest in disclosure against the privacy interest Congress intended the Exemption to protect. The first question to ask in determining whether Exemption 7(C) applies is whether there is any privacy interest in the information sought."[44]

*A.    Privacy Interests*

"FOIA requires only a measurable interest in privacy to trigger the application of the disclosure balancing tests. Thus, once a more than *de minimis* privacy interest is implicated the competing interests at stake must be balanced in order to decide whether disclosure is permitted under FOIA."[45]

Plaintiff first argues that any privacy interest that Mr. Trump or third parties have in the withheld information is *de minimis* and that disclosure therefore is warranted without consideration of the public interests in disclosure.

"The privacy interest for purposes of Exemption 7(C) is broad and encompasses the individual's control of information concerning his or her person."[46]  Furthermore, "[i]t is well established that identifying information such as names, addresses, and other personal information

---

[44]

*Associated Press v. U.S. Dept. Of Defense*, 554 F.3d 274, 284 (2d Cir. 2009) (internal quotations and citations omitted).

[45]

*Id.* at 285.

[46]

*Id.* at 287.

falls within the ambit of privacy concerns under FOIA."[47]  Moreover, third parties to proceedings have a cognizable privacy interest protected by the FOIA privacy exemptions.[48]  A measurable privacy interest exists if "the information that would be revealed by disclosure is the type of information that a person would ordinarily not wish to make known about himself or herself."[49]

The requested documents contain personal and confidential schedules of Mr. Trump and the names of individuals scheduled to meet with him in confidence.  In one instance, the documents reveal the purpose of the meeting.

This satisfies the "more than *de minimis*" threshold of exemption 7(C).  Private schedules and meetings involve information concerning one's person.  The fact that these meetings were not disclosed publicly indicates that this information was of a kind that the visitors to Mr. Trump, and Mr. Trump himself, did not wish to make generally known.  We therefore are obliged to balance the privacy interests of Mr. Trump and other third parties against the public interest in disclosure.

i.      Mr. Trump's Privacy Interests

Defendant argues that Mr. Trump, as a candidate and then president-elect, had a substantial privacy interest in his personal meetings and calendars reflecting meetings with advisors

---

[47]

*Id.* at 285.

[48]

*Id.* at 292.

[49]

*Id.* at 287.

and others.[50]   Many of the schedules were marked confidential and bear other indicia of confidentiality, including reminders "not [to] distribute this calendar as it is highly confidential."[51] Furthermore, the withheld schedules "show Mr. Trump's entire calendar for days or weeks, as well as the evolution of his calendar over time."[52]  The emails reveal "with whom [Mr. Trump] conferred at a particular time and place, and in one case the subject matter of the meeting []."[53]  The USSS "understood that *all* of the Withheld Schedules and visitor information in the Withheld Emails was provided to the USSS with the expectation that the information would be maintained as confidential and used for purposes of carrying out the [USSS's] investigative and protective mission."[54] Furthermore, defendant argues that "[c]andidates and presidents-elect ought to be able to meet with advisors and others on a confidential basis, without fear that their private interactions will be opened to public scrutiny" and that "even once in office," presidents retain a significant privacy interest in holding confidential meetings.[55]

---

[50] DI 40 at 9; DI 29 at 9.

[51] DI 28 at ¶ 34.

[52] DI 40 at 11, fn. 4.

[53] DI 29 at 10.

[54] DI 40 at 11 (emphasis in original).

[55] DI 29 at 10; DI 40 at 9.

Plaintiff argues that Mr. Trump, as a prominent businessman and candidate for federal office, had a significantly reduced privacy interest over the withheld information.[56] He claims that any privacy interest relating to Mr. Trump's "political strategy" and "struggle for advantage in the 2016 election lapsed with the election itself."[57] He states also that the expectation of privacy that Mr. Trump had over these documents, as evidenced through the indicia of confidentiality contained within certain documents, does not give rise to a cognizable privacy interest standing alone. Finally, plaintiff argues that "[s]ince Mr. Trump was not president during any time period targeted by the records, privacy interests surrounding presidential conduct are not at issue."[58]

There is merit to each of the opposing arguments. While the privacy interest of Mr. Trump is significantly reduced by his circumstances, that is a matter of its weight rather than removing it from consideration entirely. We deal below with what weight to assign to Mr. Trump's privacy interest in the balancing analysis.

ii.    The Privacy Interests of Third Parties

According to defendant, the schedules and four of the withheld emails "identify specific individuals who met, or were scheduled to meet, with Mr. Trump at a particular point in time, and in some cases provide information about the nature and/or circumstances of those meetings . . . [a]nother email identifies several individuals who needed regular access to certain secure areas

---

[56]     DI 43 at 4.

[57]     *Id.*

[58]     DI 31 at 32-33.

within Trump Tower."[59] The emails contain also "the names and contact information of non-visitor third parties, including campaign or transition staff members who transmitted them to the [USSS]."[60]

Defendant argues that the individuals referenced within these documents have privacy interests in avoiding public dissemination of their names and private information because the "identity of individuals who assist with preparation for speeches and other campaign-related events, as well as the nature of the assistance provided, is the kind of campaign-related information that both presidential candidates and those who assist them would ordinarily keep confidential and not wish to be made public."[61]

Plaintiff cites *Department of State v. Ray*[62] for the proposition that "whether disclosure of a list of names is a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue."[63] He claims that while the government "may well be correct that some [third parties] would prefer not to be associated with Mr. Trump . . . it neither presents any evidence to that effect nor explains why those

---

[59]    DI 29 at 11.

[60]    *Id.*

[61]    DI 40 at 14.

[62]    502 U.S. 164 (1991).

[63]    *Id.* at 176, fn. 12 (internal quotation omitted).

who are [sic] already been publicly associated with Mr. Trump have any remaining privacy interest in that fact."[64]

B.     *Public Interests in Disclosure*

"[T]he only relevant public interest in disclosure to be weighed [] is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding *of the operations or activities of the government.*"[65]   In other words, the relevant inquiry in the FOIA balancing analysis is the "extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to."[66]

Plaintiff first argues that disclosure of the requested information would shed light on the USSS's performance of its statutory duties in several ways.  He relies on a statement from the USSS's website that "protection of a candidate/nominee is designed to maintain the integrity of the democratic process and continuity of government."  This statement, he contends, shows that disclosure of the information sought would be helpful in evaluating whether the USSS was accomplishing those statutory goals because it would shed light on: (i) "the extent to which the [USSS] was made aware of improper contacts, if any, between Mr. Trump's campaign and agents

---

[64]

DI 43 at 7.

[65]

*U.S. Dept. Of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 495 (1994) (emphasis in original) (internal quotations omitted).

[66]

*Id.* at 497.

of foreign governments,"[67] (ii) the purported decision by the USSS not to conduct background checks on individuals meeting with presidential candidates,[68] (iii) the USSS's ability to protect the continuity of government by vetting visitors of the president-elect throughout the transition period,[69] and (iv) "how the [USSS] uses taxpayer funds to carry out its mandates."[70]

Plaintiff claims also that disclosure would aid in letting citizens know what their government is up to "because knowing who visited the president-elect is sure to provide insight into the people on whom he relied in building his cabinet, selecting presidential appointees, and determining the priorities of his administration."[71] Similarly, plaintiff argues that "knowledge of meetings with Mr. Trump during the campaign and transition would help to determine whether conflicts of interest exist between the administration's activities and Mr. Trump's business holdings, in light of his significant financial stake in more than 500 businesses."[72]

Defendant counters that disclosure of the requested information would not shed any light on the USSS's performance of its statutory duty to protect presidential candidates and presidents elect. It argues, contrary to plaintiff's assertion, that it is not the job of the USSS to assess the propriety of candidates' meetings with agents of foreign governments or to prevent protectees and

---

[67] DI 31 at 37.

[68] *Id.* at 38.

[69] *Id.*

[70] *Id.* at 39.

[71] *Id.* at 40.

[72] *Id.* at 41.

their associates from affiliating with people and engaging in activities that might undermine the transition of power. Rather, its sole statutory duty is to provide protection. The website statement on which plaintiff relies "simply describes the purpose of [USSS] protection, but does not create an independent mandate "to maintain the integrity of the electoral process and the continuity of government," as plaintiff suggests.[73]

Defendant states also that the requested information would shed no light on the background check policy or the vetting procedures utilized by the USSS. It would disclose only who met or was scheduled to meet with Mr. Trump. Nor would the information requested illuminate how the USSS spends taxpayer funds. In any case, as defendant argues, "[i]f plaintiff wanted to obtain information from the [USSS] about the costs of providing protection for Mr. Trump or his family, he would have asked for it."[74] The request, however, seeks only visitor records and schedules, "which shed no light on the costs incurred . . . or how the agency expends taxpayer funds."[75]

Defendant contends also that the requested information would shed no light into Mr. Trump's conduct as president. At most, argues defendant, the information revealed about scheduled meetings "would provide fuel for speculation as to Mr. Trump's advisors and priorities, but such 'indirect and speculative' public interests do not 'serve[] the purposes of FOIA.'"[76] Similarly,

---

[73]
DI 40 at 18.

[74]
*Id.* at 20.

[75]
*Id.*

[76]
*Id.* at 21 (quoting *Long v. Office of Personnel Management*, 692 F.3d 185, 194 (2d Cir. 2012)).

defendant argues that there is no reasonable basis to draw an inference that the occurrence of a meeting with a particular individual would reveal any information about any conflicts of interest Mr. Trump may have as president.

Defendant argues as well that there is a substantial public interest in maintaining the confidentiality of schedules and visitor information that candidates, presidents-elect, and other protectees who are private citizens provide to the USSS in confidence. The USSS declaration states that:

> "In order to fulfill its protective mission, the Secret Service needs to obtain information from its protectees, including information about their schedules and future meetings. This information allows the Secret Service to staff its protective details appropriately, advance and secure locations as needed, and provide for its agents to be physically located where needed at any given time. Protectees will be reluctant to provide this information to the Secret Service if they believe that by doing so the information will become subject to public disclosure under FOIA. Thus, compelled disclosure under FOIA of the names of individuals who meet with Presidential candidates and Presidents-elect would harm the public interest, by jeopardizing the flow of information from protectees to the Secret Service and thereby making it more difficult for the Secret Service to protect candidates and Presidents-elect."[77]

## C.    *Balancing the Public and Privacy Interests*

Having laid out the relevant interests, "Exemption 7(C) requires a court to balance the public interest in disclosure against the privacy interest Congress intended the Exemption to protect."[78]

As the Supreme Court has stated:

---

[77]

DI 28 at ¶ 35.

[78]

*Associated Press*, 554 F.3d at 284 (internal quotation omitted).

"Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure. First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise the invasion of privacy is unwarranted."[79]

Furthermore, the Second Circuit has stated that "disclosure of information affecting privacy interests is permissible only if the information reveals something *directly* about the character of a government agency or official."[80]

"The privacy interest protected by Exemption 7(C) is an interest in avoiding disclosure of personal matters and keeping personal facts away from the public eye."[81] As previously stated, Mr. Trump's visitors, and to some degree Mr. Trump himself, have cognizable privacy interests in the emails and schedules that reveal the names of who met with Mr. Trump during the time that he was a presidential candidate and president elect.

It would be wrong to overstate the privacy interests of the third party visitors in question, as there has been no showing that disclosure of their names would lead to embarrassment, retaliation or other unwelcome consequences.[82] The only information in the USSS declaration relating to potential negative consequences to third parties resulting from disclosure concerns the law

---

[79]

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

[80]

*Associated Press*, 554 F.3d at 289 (emphasis in original) (internal citation and quotation omitted).

[81]

*Id.*

[82]

*See Ray*, 502 U.S. at 176–77.

enforcement personnel identified in the documents.[83] Thus, while we are persuaded that participation in these meetings with candidates and presidents-elect is the type of information that a person often would not wish to make known about himself or herself, we should not give that generalization too much weight in the balance.[84]

With regard to Mr. Trump's privacy interest, for the reasons stated above and as articulated in the USSS affidavit, we are persuaded also that candidates and presidents-elect have

---

[83]  DI 28 at ¶ 33 ("the public interest is best served by the non-disclosure of such information, since disclosure could result in the personal harassment of law enforcement personnel and consequent diminishment of the ability of law enforcement personnel to perform their duties.")

[84]  In arguing that third parties have a negligible privacy interest in information revealing meetings with presidential candidates, plaintiff draws an analogy to federal laws mandating the disclosure of political contributions. He claims that the "Supreme Court has repeatedly upheld the constitutionality of these sorts of disclosure provisions" and that "[o]nly where there is specific evidence that there is 'a reasonable probability that disclosure of . . . contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties' is there a significant privacy interest." *Id.* (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 367 (2010)). Defendant rightly points out that the language from *Citizen's United* relied upon by plaintiff involved the standard for bringing an as-applied challenge to disclosure laws and argues that the Supreme Court's campaign contribution jurisprudence—if relevant at all—only "underscore[s] the importance of the [third-party] privacy interests at stake" in this case. DI 40 at 16.

Plaintiff's analogy to federal laws mandating the disclosure of campaign contributions is unavailing. First, the information revealed in knowing who contributed to a political campaign is fundamentally different than knowing who met in person with a candidate or president-elect at a particular point in time. Plaintiff suggests that this information would "at most, suggest an individual's political affiliation or donor status," but it would show far more than that. It would reveal that a person had a personal relationship or connection with Mr. Trump sufficient to gain an in-person meeting. Second, the Supreme Court's jurisprudence surrounding campaign contribution laws does not diminish the privacy interests of third parties for purposes of this FOIA analysis. As the Supreme Court has stated, disclosure can "seriously infringe on privacy of association and belief guaranteed by the First Amendment" notwithstanding the ultimate legality of disclosure laws. *Buckley v. Valeo*, 424 U.S. 1, 64 (1976). This line of authority only fortifies the existence of a measurable privacy interest of the third parties in this case.

some cognizable privacy interest in "maintaining the confidentiality of their personal schedules and the identity of individuals with whom they meet."[85] But that does not decide this case because the weight to be given that interest is limited substantially by the fact that candidates for federal office are not merely private citizens. They are "public figures with less privacy interest than others in information relating to their candidacies."[86] Mindful that Mr. Trump's privacy interest is tempered by the fact that he was an aspiring and then successful candidate for federal office during the relevant period and that there has been no showing of potential unwelcome consequences on the part of the third party visitors resulting from disclosure, we consider the public interest in the information requested.

To begin, we agree with defendant that disclosure of the emails and schedules would not advance the public's understanding of the USSS's performance of its statutory duties. The USSS is statutorily vested with a mandate to provide protection to major presidential candidates and presidents-elect, and understanding how the USSS performs that duty would be a cognizable public interest for FOIA purposes. But contrary to plaintiff's assertion, disclosure would not advance public understanding of how the USSS spends taxpayer funds, vets visitors, conducts background checks or any other USSS function. Rather, the information would reveal only who met with Mr. Trump at a given time. Had plaintiff been interested in information concerning how the USSS performs its protective mandate, he would have tailored his FOIA request accordingly. At bottom, however, all

---

[85]

DI 28 at ¶ 34.

[86]

*Common Cause v. Nat'l Archives and Records Serv.*, 628 F.2d 179, 184 (D.C. Cir. 1980).

that would be revealed pursuant to these requests is who met or was scheduled to meet with Mr. Trump. Such information would shed no light on the actions or operations of the USSS itself.

Plaintiff's reliance on the comment from the USSS's website that "protection of a candidate/nominee is designed to maintain the integrity of the democratic process and continuity of government" is misplaced. Plaintiff asserts that this statement is an official agency interpretation of its statutory role "entitled to [*Chevron*] deference" for purposes of a FOIA analysis.[87] The statement itself appears in the "frequently asked questions" section of the USSS's public website as an answer to the question "[w]hat is the history of candidate/nominee protection?"[88] Without belaboring the obvious, we simply note that this statement merely describes the genesis of the USSS's protective mandate. Accordingly, we do not consider the website statement to confer a free-floating grant of statutory authority requiring a public interest analysis of whether every action taken or not taken by the USSS conforms with the amorphous goal of maintaining the continuity of government.

There remains plaintiff's contention that the documents would shed light on whom Mr. Trump relied upon in selecting his initial cabinet and perhaps other presidential appointees and determining the priorities of his administration, and that the public interest in disclosure outweighs the relevant privacy interests. That may be so. But the Court is unable to make that determination on the basis of the current USSS declaration. As previously stated, during the period in question Mr. Trump was not a member of the government. But it certainly was not merely a private citizen. The documents likely reflect meetings that occurred in the days and weeks before Mr. Trump assumed

---

[87]

    DI 43 at 9.

[88]

    *Id.* at fn. 4; https://www.secretservice.gov/about/faqs/ (Last visited July 26, 2019).

the highest office in the land. We lack information sufficient to determine whether disclosure of the identities of those with whom he met in that time period could shed light on the operations of the government once Mr. Trump became president and other matters of legitimate public interest.

The emails and schedules do not reveal the reasons for the meetings.[89] However, in certain circumstances, the mere occurrence of a meeting or series of meetings with particular individuals could reveal information advancing public knowledge of whom Mr. Trump relied upon in making cabinet and other presidential appointments in or determining his presidential priorities. It may be that these particular documents do not reveal information shedding light on these activities, but defendant paints with too broad a brush in asserting that any meeting with any individual during the time in question categorically would not shed light on Mr. Trump's post-inauguration priorities and conduct. For example, if Mr. Trump's schedules indicated that he had multiple meetings with representatives of particular interest groups shortly before publicly announcing appointments of members or proponents of one or more of those groups or their policy preferences, some reasonably might draw conclusions, rightly or wrongly, about Mr. Trump's post-inaugural priorities from the occurrence of those meetings.

The USSS declaration is similarly lacking with respect to information needed for the Court to consider properly the privacy interests of the individuals meeting with Mr. Trump, and Mr. Trump himself. For example, the declaration provides no information from which the Court can assess whether the meetings related to Mr. Trump's candidacy or instead regarded personal matters.

---

[89] The single email revealing the purpose of the meeting indicates that it was for the preparation of a speech while Mr. Trump was a candidate. Knowing the identity of who assisted with the preparation of a campaign speech does not reveal information about the operations of government.

Furthermore, there is no mention of whether disclosure of the documents has the potential to result in unwelcome consequences on the part of the visitors. Absent this information, the declaration lacks "reasonable specificity of detail as to demonstrate that the withheld information logically falls within [exemption 7(C)]."[90]

## IV.    Revised Agency Submissions

Plaintiff asserts that "*in camera* review would be warranted to assess the validity of the government's asserted privacy interests" if we do not grant summary judgment in his favor.[91] "If the agency fails to provide a sufficiently detailed explanation to enable the district court to make a de novo determination of the agency's claims of exemption, the district court then has several options, including inspecting the documents *in camera*, requesting further affidavits, or allowing the plaintiff discovery."[92] But "[a] court should only consider information *ex parte* and *in camera* that the agency is unable to make public if questions remain after the relevant issues have been identified by the agency's public affidavits and have been tested by plaintiffs."[93] At this stage, the Court finds

---

90

    *Wilner*, 592 F.3d at 76 (internal quotation omitted).

    Because we cannot properly evaluate the privacy interests of Mr. Trump and the third-party visitors or the public interest in disclosure on the basis of the current USSS declaration, we do not take up defendant's arguments relating to the public interest in non-disclosure at this time. We will consider those arguments if defendant chooses to assert them in a renewed motion for partial summary judgment, as described below.

91

    DI 31 at 44.

92

    *ACLU v. U.S. Dep't of Justice*, 210 F.Supp.3d 467, 485-86 (S.D.N.Y. 2016) (quoting *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir.1998)).

93

    *Wilner*, 592 F.3d at 75-76.

it appropriate to allow the USSS to provide additional declarations or other submissions in support of its exemption 7(C) withholdings, taking into account the deficiencies discussed above.[94] After the filing of additional agency submissions, the parties will be free to renew their arguments with respect to the applicability of exemption 7(C) to the visitors identified in the emails and schedules, in accordance with the schedule set forth below.

*Conclusion*

For the foregoing reasons, defendant's motions for summary judgment [17-cv-8153, DI 27 and 18-cv-7516, DI 12] are granted to the extent that plaintiff's claims for disclosure of records reflecting names and other information pertaining to law enforcement personnel are dismissed and denied in all other respects. Plaintiff's cross motion [17-cv-8153, DI 30] is denied in all respects.

This ruling is without prejudice to defendant renewing its motion, on or before October 15, 2019, on the basis of revised *Vaughn* submissions taking into account the deficiencies identified above and without prejudice also to a renewed cross-motion by plaintiff taking into account defendant's revised submissions. Any such cross motion shall be filed on or before November 15, 2019.

---

[94] *Cf. ACLU*, 210 F.Supp.3d at 486 ("The Court finds it appropriate, at this juncture, to provide DOJ with the opportunity to provide further substantiation of its work product claims with respect to these documents."); *Electronic Frontier Foundation v. U.S. Dep't of Justice*, 826 F.Supp.2d 157, 174–75 (D.D.C. 2011) ("Having found the DOJ's *Vaughn* submissions inadequate, the Court has several options regarding how to proceed in this case . . . [t]he Court finds that the best approach is to direct the agency to revise their *Vaughn* submissions, taking into account the deficiencies identified by the Court.").

The Clerk shall terminate the pending motions.

SO ORDERED.

Dated:    August 15, 2019

_____
Lewis A. Kaplan.
United States District Judge